***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby reverses the deputy commissioner's Opinion and Award, as stated below.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the deputy commissioner hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On November 10, 1999, an employment relationship existed between plaintiff-employee and defendant-employer.
3. Travelers is the carrier at risk.
4. On or about November 10, 1999, plaintiff, was picking up a bag of merchandise to hand to a customer when she felt a sharp pain running down from her neck into her left arm.
5. Defendants paid medical benefits for treatment received by plaintiff as a result of her November 10, 1999 injury, but have denied temporary total benefits.
6. On November 10, 1999, the plaintiff's average weekly wage was $146.08, yielding a compensation rate of $97.39.
 ***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about November 10, 1999, plaintiff-employee, Mary Q. Wilson (hereinafter "plaintiff"), was employed by defendant-employer, Toys R Us, as a cashier. At the time of her hiring on July 9, 1999, and throughout the course of her employment at Toys R Us, plaintiff had restrictions, related to a claim for carpal tunnel syndrome with a previous employer, which restricted her to no heavy lifting, no pushing, no pulling and no repetitive work. Plaintiff also had cervical surgery several years prior to the November 10, 1999 injury.
2. On November 10, 1999, Plaintiff was lifting a bag of toys when she felt pain in her left upper arm and shoulder. Plaintiff sought medical treatment on November 11, 1999, at which time she was seen at Cape Fear Family Medical Center complaining of left neck and shoulder pain after lifting heavy bags at work.
3. Plaintiff returned to work for Toys R Us, light duty, on November 17, 1999 and worked up through approximately the day before Thanksgiving. According to Toys R Us front end manager, Chizuko Gilmore, Toys R Us had light duty work available for plaintiff and would have continued to accommodate her restrictions at work. Ms. Gilmore, however, testified that plaintiff's return-to-work issues were handled by Mr. Woody, the store manager. Ms. Gilmore was aware that plaintiff had talked to Mr. Woody, however, was not aware of the content of the discussions. Ms. Gilmore testified that she asked Mr. Woody whether plaintiff was returning to work because she wanted the information to complete the work schedules. Plaintiff testified that she spoke to Mr. Woody about her return to work within her restrictions and was ready and available to return to work, but she was not placed on the schedule. Ms. Gilmore indicated that plaintiff was terminated because she did not show for work; however, plaintiff was not informed in writing of her termination. Based on the conflicting evidence, the Full Commission finds that plaintiff did attempt to return to work, that Mr. Woody did not notify Ms. Gilmore that plaintiff was available for work, and therefore plaintiff was not placed on the work schedule. Therefore, the greater weight of the competent evidence fails to establish that plaintiff refused suitable employment on or after Thanksgiving 1999. Defendant-employer failed to offer plaintiff employment by failing to place her on the schedule after she had reported for light duty work.
4. On November 23, 1999, plaintiff was seen in the emergency room of Highsmith-Rainey Hospital complaining of tenderness in her left intrascapular area. Plaintiff was diagnosed with a thoracic back strain and was released to return to work on November 25, 1999.
5. On November 29, 1999, plaintiff returned to Cape Fear Valley Medical Center. She complained of continued shoulder and neck pain, as well as hand numbness.
6. On March 2, 2000, plaintiff was seen at Sandhills Orthopaedic and Spine Center by James Rice. Dr. Rice's impression was that plaintiff was suffering from a cervical disc lesion and he referred plaintiff to a neurosurgeon. Dr. Rice also indicated that plaintiff could return to light duty work, with no lifting greater than ten (10) pounds.
7. On March 24, 2000. Plaintiff was seen by Dr. Timothy Collins at Private Diagnostic Clinic in Sanford. Dr. Collins recommended that Plaintiff undergo an MRI scan to rule out a herniated disc. Plaintiff had an MRI on April 6, 2000, which revealed bulging discs at C4-5 and C5-6. On April 25, 2000, Dr. Collins recommended that Plaintiff begin a program of physical therapy. Dr. Collins also indicated that plaintiff could return to work on May 1, 2000 with no lifting over twenty (20) pounds for one (1) month, and then plaintiff could resume regular duty.
8. On July 20, 2000, at the request of Dr. Collins, plaintiff was seen by Dr. Samuel St. Clair for a surgical evaluation. According to Dr. St. Clair's notes, no clear cut lesions were seen in plaintiff's MRI scan, and therefore, he would not recommend surgical intervention.
9. On October 6, 2000, Dr. Collins indicated that plaintiff had reached maximum medical improvement. Dr. Collins also indicated that plaintiff could return to work with permanent restrictions of no lifting greater than twenty (20) pounds, no bending, stooping, crawling or climbing ladders.
10. On November 13, 2000, plaintiff was seen by Dr. Robert Elkins at Complex Medical Evaluations for evaluation of her neck pain. Dr. Elkins recommended that plaintiff undergo EMG/NCV studies, which failed to show evidence of any radiculopathy. Based upon these findings, on December 11, 2000, Dr. Elkins indicated that plaintiff could return to work without restrictions.
11. On January 10, 2001, Dr. Collins again indicated that plaintiff had reached maximum medical improvement. Dr. Collins also indicated that Plaintiff could return to work with restrictions of no lifting greater than forty (40) pounds. At his deposition, Dr. Collins indicated that these restrictions were similar to the restrictions plaintiff was under when she began her employment with Toys R Us. Based on Dr. Collins' testimony and the work restrictions placed on plaintiff on January 10, 2001, the Full Commission finds that plaintiff reached maximum medical improvement on this date and that her condition had improved such that she was back to her pre-injury baseline and could perform her former employment. The Commission has not found where Dr. Collins has rated plaintiff for her compensable injury.
12. On February 24, 2001, plaintiff was involved in a single-car automobile accident when the car she was operating struck a tree. Plaintiff was seen by Dr. Collins on February 26, 2001 indicating that her neck hurt more after the accident, that she had experienced headaches and frequent urination since the accident. Plaintiff also had increased reflexes in her arms, legs, and ankles, and that plaintiff exhibited signs of depression secondary to her increased pain. Dr. Collins, for the first time, recommended that plaintiff see a counselor for her depression. Based upon these complaints, Dr. Collins' impression was that plaintiff was suffering from probable cervical cord compression (new) with a new onset of symptoms, and he requested a repeat MRI scan.
13. Plaintiff had the repeat MRI scan, and according to Dr. Collins' notes, the scan indicated that the herniated disc at C6-7 had increased in size with significant spinal stenosis and flattening at C6-7. Based upon these findings, Dr. Collins requested a neurosurgical consultation. Specifically, Dr. Collins noted that the disc "appeared to be indenting the spinal cord, where previously it was just right next to the spinal cord."
14. On May 3, 2001, plaintiff advised Dr. St. Clair that her symptoms were now severe enough that she wanted to consider surgery. On May 24, 2001, Dr. St. Clair requested a spine series, the results of which revealed degenerative changes with no obvious instability or subluxation.
15. On May 29, 2001, plaintiff was seen by Dr. Michael Haglund. According to Dr. Haglund's notes, plaintiff was stable until a recent automobile accident after which her pain had increased. Dr. Haglund recommended a repeat MRI scan and further indicated that plaintiff was a candidate for a diskectomy and fusion at C5-6 and C6-7.
16. The greater weight of the competent medical and lay evidence establishes that plaintiff was disabled from her former employment from November 25, 1999, when she was released to return to work on light duty, with restrictions, through January 10, 2001, when plaintiff was found to be at MMI with her pre-injury restrictions.
17. Plaintiff's new symptoms arising after February 24, 2001 are not related to the November 10, 1999 incident, but rather are solely related to the automobile accident. Prior to the accident, Plaintiff had reached maximum medical improvement and was released by Dr. Collins to return to work under a 40-pound lifting restriction. Dr. Elkins opined Plaintiff could return to work under no restrictions. Moreover, prior to the automobile accident Plaintiff's physicians indicated that she was not a surgical candidate and felt conservative treatment was sufficient for her condition. Following the February 24, 2001 accident, Plaintiff experienced new symptoms, including headaches, frequent urination and increased pain, and her repeat MRI revealed a large disc herniation, as opposed to prior studies which showed a mild disc herniation. Significantly, Dr. Collins noted on February 26, 2001 that Plaintiff was suffering from a new onset of symptoms of a minor spinal cord injury, and that there were changes in the appearance of the spinal cord.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSIONS OF LAW
Plaintiff sustained an injury to her cervical spine as a result of a specific traumatic incident on November 10, 1999. G.S. § 97-2(6).
Plaintiff was temporarily totally disabled as a result of her compensable injury from November 25, 1999, through January 10, 2001, when she reached maximum medical improvement and was released to return to work with her pre-injury restrictions. G.S. § 97-29. Plaintiff is entitled to recover indemnity benefits at the rate of $97.39 per week during this period.
Plaintiff has the burden to prove disability and has failed to present evidence of disability from the compensable injury after she reached maximum medical improvement. G.S. §§ 97-29, 97-30. The greater weight of the competent evidence is that plaintiff could have returned to her former employment on January 10, 2001, and was no longer disabled as a result of her compensable injury. Plaintiff, however, has not received an impairment rating, if any is appropriate, for her compensable injury and therefore this action is remanded to consider this issue.
Plaintiff is entitled to reasonable and necessary medical care, subject to the limitations of Section 97-25.1, for her compensable injury which expressly includes the treatment provided prior to her January 24, 2001 automobile accident. G.S. § 97-25. Plaintiff's compensable cervical injury did not require surgery prior to the automobile accident, and the current need for surgery arises from the intervening automobile accident, therefore, should plaintiff have spinal surgery, the surgery and resulting disability are not compensable under this claim. G.S. §§ 97-2(6), 97-2(19), 97-25.
 ***********
Based upon the foregoing, the Full Commission enters the following:
 AWARD
Plaintiff is entitled to receive total temporary disability benefits at the rate of $97.39 per week for the period from November 25, 1999, through January 10, 2001. This sum has accrued and shall be paid in a lump sum, subject to attorney's fees awarded below.
This action is remanded, absent an agreement of the parties, to a deputy commissioner for further hearing to determine whether plaintiff is entitled to benefits under Section 97-31 for her compensable injury.
Plaintiff is entitled to reasonable and necessary medical care, subject to the limitations of Section 97-25.1, for her compensable injury which expressly includes the treatment provided prior to her January 24, 2001 automobile accident. G.S. § 97-25. Plaintiff's injury did not require surgery prior to the automobile accident, and the current need for surgery arises from the intervening automobile accident, therefore, should plaintiff have spinal surgery, the surgery and resulting disability are not compensable under this claim. G.S. §§ 97-2(6),97-2(19), 97-25.
Plaintiff's counsel is entitled to recover 25% of the sums awarded in paragraphs 1 and 2 of this Award. Because these sums are payable in a lump sum, defendant shall withhold 25% from plaintiff's recovery and make the payment of attorney's fees directly to plaintiff's counsel.
All costs shall be paid by defendants, including the expert witness fees previously awarded by the deputy commissioner.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER